UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

**QUINTESSA HUEY, et al.**                                  **CIVIL ACTION**

**versus**                                                  **No. 07-1169**

**SUPER FRESH/SAV-A-CENTER, INC., et al**                   **SECTION: "I"/2**

                         ORDER AND REASONS

Before the Court are several motions to exclude certain evidence or testimony at trial. The motions are resolved as follows:

(1) Defendant Super-Fresh/Sav-A-Center and The Great Atlantic & Pacific Tea Company's (collectively "A&P") motion to strike privileged documents (Rec. Doc. No. 277) is **GRANTED WITHOUT OPPOSITION.**

(2) Plaintiffs' motion in limine to exclude settlement information (Rec. Doc. No. 383) is **GRANTED.** Information regarding plaintiffs' settlement with Lexington Insurance Company ("Lexington") and Certain Underwriters at Lloyd's, London ("Lloyd's") is inadmissible pursuant to Rule 408 of the Federal Rules of Evidence. The Court is not convinced that settlement information is relevant for any purposes other than to prove the invalidity or amount of plaintiffs' claims. Both insurers contest liability and coverage for plaintiffs' claims in their respective settlement agreements

                                1

and the lump sum agreements do not allocate any settlement amounts as insurance proceeds. Lexington exhausted its $25 million policy limit prior to settlement and Lloyd's continued to contest that any further insurance proceeds were owed after unconditionally tendering $1.2 million to plaintiffs. Therefore, the Court is not persuaded that these settlements constitute insurance proceeds entirely, and to the extent that the settlements do include insurance proceeds, it is unclear how much of the total amount is insurance proceeds.

A&P has also not demonstrated how these lump sum settlement agreements will be relevant to plaintiffs' obligation to mitigate damages. When Lloyd's unconditionally tendered $1.2 million to plaintiffs in October, 2007, the parties, including A&P, entered into an agreement which acknowledged that plaintiffs "do not wish the Current Tendered Amount to be applied to repair, rebuild, or restoration of the Property" but that if the lease is determined to be in full force and effect by a final judgment or if A&P waived its claim that the lease had terminated, plaintiff would be required to use the tendered amount to repair the property.[1] A&P now contends that the lease is in full effect and that plaintiffs, therefore, should have mitigated their damages. However, A&P had terminated the lease in September, 2006 and did not waive its claim

---

[1] Rec. Doc. No. 489-4, pp. 1-2.

to termination of the lease until February 13, 2009.[2] Plaintiffs' settlement agreements with Lexington in April, 2008 and Lloyd's in June, 2008 followed A&P's termination of the lease. In light of the facts that A&P only recently waived its claim to termination of the lease and that the October, 2007 agreement to repair the store with tendered amounts only addresses the $1.2 million unconditional tender from Lloyd's, not any subsequent settlement funds, the Court questions whether settlement information will be relevant to plaintiff's failure to mitigate damages. Notwithstanding, the Court finds that any probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and a misleading of the jury.

(3) Commonwealth's motion to exclude testimony of Peter Knowe (Rec. Doc. No. 373) is **GRANTED IN PART AND DENIED IN PART.** Notwithstanding the fact that bad faith issues are common to most Hurricane Katrina cases, the instant matter involves issues, such as the implication of lease agreements and payment to additional insureds and loss payees, that are not present in the typical homeowner's insurance case. Therefore, Knowe's testimony with respect to industry standards for handling claims that involve multiple insureds or additional insureds will assist the jury in its bad faith determination. However, Knowe shall be precluded from testifying to

---

[2] Rec. Doc. No. 468.

3

any legal conclusions, including whether Commonwealth's conduct rises to the level of bad faith, whether Commonwealth acted in accordance with its duty of good faith and fair dealing, whether Commonwealth's conduct was intentional, arbitrary and capricious, or malicious, and whether plaintiffs constitute additional insureds under the Commonwealth policy.

(4) A&P's motion to exclude plaintiff's expert Bert Verdigets, CPA (Rec. Doc. No. 203)is **DISMISSED AS MOOT** in light of the parties' agreement that the jury will determine the time period of any interest due and that any interest awarded will be at the Louisiana judicial rate.

(5) A&P's motion to exclude evidence of consequential damages (Rec. Doc. No. 378)is **DENIED.** Louisiana Civil Code article 1997 permits recovery of consequential damages when an obligor has, in bad faith, failed to perform an obligation.[3] In light of plaintiffs' claims that A&P breached its obligations to pay insurance proceeds, rent, and taxes, in bad faith, plaintiffs' damages are not subject to the limitation of article 2000.[4] *See Wright Bros. Corp. v.*

---

[3] Article 1997 provides, "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." Comment (b) to article 1997 defines a bad faith obligor as one who "intentionally and maliciously fails to perform his obligation."

[4] Article 2000 provides in pertinent part:
When the object of the performance is a sum of money, damages for delay in performance are measured by the

4

*Colomb*, 517 So. 2d 1194 (La. Ct. App. 4th Cir. 1987); *Friendly Fin., Inc. v. Cefalu Realty Inv., Inc.*, 202 So. 2d 558, 560-61 (La. Ct. App. 1st Cir. 1974); 6 Saul Litvinoff, La. Civ. Law Treatise, Law of Obligations § 9.5 (2d ed.). Pursuant to article 1997, plaintiffs may introduce evidence of consequential damages other than attorney's fees. *See Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 201 (La. 2008).

(6) A&P's motion to exclude evidence of non-pecuniary damages (Rec. Doc. No. 379)is **GRANTED,** given that plaintiffs have filed this lawsuit in their capacity as trustees as opposed to individuals. *See* La. Rev. Stat. Ann § 51:1409(A)[5]; *Schenck v. Living Centers-East, Inc.*, 917 F. Supp. 432 (E.D. La. 1996); *see also Abbott Tours, Inc. v. Marriott Corp.*, 567 So. 2d 170, 173-74 (La. Ct. App. 4th Cir. 1990); *Traina v. Nationsbank of Texas*, No. 00-1160, 2001 WL 1041773, at *2-3 (E.D. La. Sept. 7, 2001); *Succession of Harvey*

---

        interest on that sum from the time it is due, at the rate agreed by the parties, or in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500. The obligor may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more.

[5] The Louisiana Unfair Trade Practices and Consumer Protection Law provides:
    Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action **individually but not in a representative capacity** to recover actual damages. La. Rev. Stat. Ann. § 51:1409(A)(emphasis added).

5

*v. Dietzen*, 716 So. 2d 911, 916 (La. Ct. App. 4th Cir. 1998).

(7) Commonwealth's motion to exclude evidence of interest on plaintiffs' insurance claim and bad faith damages under Louisiana Revised Statute sections 22:1220 and 22:658 (Rec. Doc. No. 372) is **DENIED.** Plaintiffs may establish the value of their property damage claim in the absence of expert testimony. Therefore, plaintiffs may introduce evidence of interest on their claim.

Commonwealth also argues that plaintiffs lack evidence to support their claim for bad faith damages because they did not submit a proof of loss prior to filing this lawsuit. Commonwealth's motion essentially re-urges a motion for summary judgment that another section of this Court previously denied. Notwithstanding, plaintiffs argue that one month after they filed this lawsuit for property damage and two weeks after they served Commonwealth with the lawsuit, Commonwealth paid its remaining policy limits to A&P. Accordingly, plaintiffs may introduce evidence with respect to their claim for bad faith damages.

New Orleans, Louisiana, March 7th, 2009.

LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**