**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **QUINTESSA HUEY, et al.** | **CIVIL ACTION** |
| **versus** | **No. 07-1169** |
| **SUPER FRESH/SAV-A-CENTER, INC., et al** | **SECTION: "I"/2** |

## ORDER AND REASONS

Before the Court is a motion, filed by Super-Fresh/Sav-A-Center, Inc. ("Sav-A-Center") and Great Atlantic and Pacific Tea Company, Inc. ("A&P"), to require joinder of GE Commercial Finance Business Property Corporation ("GE"). For the following reasons, the motion is **DENIED.**

## BACKGROUND

Plaintiffs, Quintessa Huey and Caryn L. Fong, as trustees of the Huey & Fong Trust, and Amy Huey, as trustee of the Kenneth Huey Family Trust, filed this lawsuit in state court on January 25, 2007,[1] against defendants Sav-A-Center, A&P, Lexington Insurance Company, Commonwealth Insurance Company, Underwriters at Lloyd's, London, and Continental Casualty.[2] Plaintiffs' petition alleges that in purchasing a supermarket, they were assigned a lease executed by a previous owner and the tenant, Sav-A-Center. The

---

[1] Plaintiffs filed the lawsuit in the 34th Judicial District Court for the Parish of St. Bernard, State of Louisiana. The lawsuit was removed on March 2, 2007. Rec. Doc. No. 1.

[2] Rec. Doc. No. 1-1, paras. 1-9. Lexington Insurance Company, Underwriters at Lloyd's, London and Continental Casualty have been dismissed from the lawsuit.

1

lease included a guaranty executed by A&P to perform all obligations upon default of the tenant.³ Plaintiffs allege that Sav-A-Center and A&P (collectively "the Grocers") breached the lease agreement and acted in bad faith by failing to provide plaintiffs with insurance proceeds for damages caused by Hurricane Katrina and by failing to pay rent and taxes.⁴ Plaintiffs also allege that the Grocers are liable for fraud, misrepresentation, wrongful termination of the lease agreement, civil conspiracy, and conversion.⁵

The property at issue in this lawsuit is subject to a mortgage and assignment of lease and rents executed in favor of GE, which loaned the original owner of the property $7.7 million in August, 2000.⁶ On February 6, 2009, GE notified plaintiffs by letter that plaintiffs had defaulted on their obligations under the mortgage and loan documents by failing to pay GE insurance proceeds recovered in connection with the property, failing to promptly restore the property to its original condition, and using insurance

---

³ *Id.* at paras. 23, 24, 32.

⁴ *Id.* at paras. 160-162; Rec. Doc. No. 121, para. 159(R).

⁵ Rec. Doc. No. 1-1, paras. 160-208. The Grocers counterclaimed for abatement of rents and termination of the lease due to plaintiffs' failure to timely restore the property to its pre-Katrina condition. Rec. Doc. No. 29; Rec. Doc. No. 119. However, the Grocers waived termination of the lease on February 13, 2009. Rec. Doc. No. 468.
 With respect to Commonwealth Insurance Company, plaintiffs allege that the insurer breached its duty to adjust plaintiffs' property damage claim in good faith. Rec. Doc. No. 1-1, para. 214.

⁶ Rec. Doc. No. 507-4; Rec. Doc. No. 507-5.

proceeds for purposes not authorized by the mortgage.[7] The letter also notified plaintiffs of their failure to pay a $60,839.35 installment.[8]

Following plaintiffs' default, GE advised the Grocers that the assignment of rents and leases "has become absolute" and that pursuant to Louisiana law, the Grocers are "obligated and directed to deliver all Rent...and all other performance by the Tenant due under the Lease directly to the Mortgagee."[9] The correspondence further directed the Grocers to Louisiana Revised Statute § 9:4401(G)(2), which provides that "a debtor who has received written notice that the assignment has become absolute will not be discharged from his debt if he pays anyone other than the assignee."[10]

At a March 6, 2007 pretrial conference, counsel for the Grocers notified the Court of the GE letter and further informed the Court of the Grocers' position that the assignment of lease and rents makes GE a necessary party to the litigation. On March 10, 2009, the Grocers filed this motion to require joinder of GE.[11]

---

[7] Rec. Doc. No. 507-3.

[8] *Id.* at p.3.

[9] Rec. Doc. No. 507-7, p. 2.

[10] *Id.*

[11]The Court notes that this section of the Court scheduled trial to commence on March 23, 2009. Before the case was transferred to this section, trial had been scheduled to commence on June 16, 2008 and July 14, 2008.
 Plaintiffs argue that, pursuant to Rule 12(h) of the Federal Rules of Civil Procedure, the Grocers waived their right to assert a Rule 19(a) motion

**LAW AND ANALYSIS**

**I. STANDARD OF LAW**

Rule 19 of the Federal Rules of Civil Procedure "provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue."*HS Resources, Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003). Rule 19 sets forth a two-step analysis. "First, Rule 19(a) provides a framework for deciding whether a given person should be joined. Second, if joinder is called for, then Rule 19(b) guides the court in deciding whether the suit should be dismissed if that person cannot be joined." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986); *Dunne v. Hackett & Dunne P'Ship*, 1999 WL 147672, at *2 (E.D. La. Mar. 15, 1999).

Pursuant to Rule 19(a), any party who is "subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined" if:

(A) in that person's absence, the court cannot accord

---

by waiting until the eve of trial. However, Rule 12(h) only provides that a party waives any defense listed in Rule 12(b)(2)-(5). Fed. R. Civ. P. 12(h)(1). It does not refer to the Rule 12(b)(7) defense of failure to join a party under Rule 19. *Id.* Moreover, Rule 12(h)(2) provides that the defense of failure to join a party may be raised at trial. Fed. R. Civ. P. 12(h)(2).
   The Court rejects plaintiffs' argument that because Rule 12(h)(2)expressly preserves the defense under "Rule 19(b)" without mentioning Rule 19(a), the Grocers have waived their right. As discussed below, Rule 19(b) is merely the second part of the analysis. If Rule 19(b) can be raised at trial, certainly Rule 19(a) may be addressed as well. Finally, the Grocers only recently received notice from GE, in a letter dated February 20, 2009, that the assignment had become "absolute" and that the Grocers must direct all rent payments to GE. Rec. Doc. No. 507-7, p. 2.

4

> complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:(i) as a practical matter impair or impede the person's ability to protect the interest; or(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

However, "if such joinder would destroy the court's jurisdiction, then the court must determine under Rule 19(b) whether to press forward without the [party] or to dismiss the litigation." *Wingate*, 327 F.3d at 439; *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 84 (5th Cir. 1997) ("If jurisdiction is threatened, the court must determine whether the potentially joined parties are indispensable, that is, if the court finds that, as a matter of equity and good conscience, the lawsuit cannot proceed without them."). Rule 19(b)[12] provides factors for the court to consider in making this determination, including "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A)protective measures in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder."

---

[12] Rule 19(b) provides, "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."

## II. DISCUSSION

There is no dispute that GE has an interest in plaintiffs' lawsuit for rents, particularly in light of GE's recent notice that the assignment, which covers "all rents, income and profits which may now or hereafter be or become due or owing under the Leases,"[13] has become absolute. The dispute, however, arises with respect to whether GE's interest makes it a necessary party to the litigation.[14]

The Grocers contend that Rule 19 mandates the joinder of GE due to its position as mortgagee and assignee to plaintiffs' rights under the lease.[15] The Grocers cite cases indicating that assignees to rights under patents are necessary parties. *See, e.g. Novacolor v. Am. Film Techs., Inc.*, No. 91-6213, 1992 WL 170564 (N.D. Ill. July 16, 1992); *Gould v. Control Laser Corp.*, 462 F. Supp. 685, 687 (M.D. Fla. 1978). Plaintiffs contend that such patent cases are not

---

[13] Rec. Doc. No. 507-4, p. 1.

[14] Plaintiffs acknowledge GE's interest, but contend that GE is not a necessary party to the litigation because plaintiffs can adequately represent GE's interest. Rec. Doc. No. 515, p. 8 ("Merely having an interest in this action is not enough to make a person necessary under Rule 19...Plaintiffs and G.E.'s interest in this suit are not only similar they are identical.").
Although Rule 19 no longer characterizes parties as "necessary," the United States Supreme Court has explained that "'necessary party' is a term of art whose meaning parallels Rule 19(a)'s requirements." *Orff v. United States*, 545 U.S. 596, 602-03, 125 S. Ct. 2606, 2610, 162 L.Ed. 2d 544 (2005).

[15] Plaintiffs contend that as a mortgagee, GE's sole interest in this matter is receipt of the balance of its loan. Plaintiffs cite *Bosteve Ltd. v. Marauszwki* to argue that such an interest is insufficient to compel a party's joinder. 110 F.R.D. 257 (E.D. N.Y. 1986). The Court does not disagree that GE's interest may be limited to receiving the balance of its loan. However, the instant case is distinguishable from *Bosteve* in that GE has an assignment of lease and rents that has become absolute, entitling GE to direct payment from the Grocers.

6

analogous to this case and provide caselaw stating that "'assignment has a particular meaning in patent law, implying a formal transfer of title,' where the grant in the agreement is 'of all substantial rights.'" *Novacolor,* 1992 WL 170564, at * 10.

The assignment in this case grants, transfers, and conveys "all right, title and interest of Assignor in, to and under all written and oral leases and rental agreements," but also provides that "this Assignment shall not operate to place responsibility for the control, care, management or repair of the Property, or parts thereof, upon [GE], nor shall it operate to make [GE] liable for the performance of any of the terms and conditions of any of the Leases...."[16] The fact of assignment alone does not necessarily convince the Court that GE must be joined.

Nonetheless, GE may be a necessary party to this litigation due to a Louisiana statute that requires a tenant such as the Grocers to pay the assignee of the lease directly once notice is given that the assignment has become absolute. *See* La. Rev. Stat. Ann. 9:4401(G)(1997). The statute provides in pertinent part:

G. (1) The rights of an assignee against the debtor shall be subject to any dealing by the debtor with the assignor, any other assignee, or other successor in interest of the assignor until the debtor receives written notice from or on behalf of the assignee or the assignor that the assignment of the particular lease or rent of which he is debtor has become absolute...
(2) Except as provided in Subsection(G), a debtor who has received written notice that the assignment has become absolute will not be discharged from his debt if he pays anyone other than the

---

[16] Rec. Doc. No. 507-4, p. 4.

assignee...

As discussed above, GE sent notice to the Grocers that the assignment of lease and rents had become absolute and that the Grocers must direct to GE all rent and other performance due under the lease. In the event that this Court's judgment orders the Grocers to pay plaintiffs an award for rents or other obligations owed under the lease and such an amount is paid by the Grocers, the Grocers argue that they face a substantial risk of incurring multiple obligations due to the statute's explicit provision that payment to the assignor will not excuse the debtor from paying the assignee.[17]

---

[17]The Grocers argue that "GE's recent decision to exercise its rights as [plaintiffs'] assignee places [the Grocers] in substantial peril of incurring duplicative and inconsistent obligations." Rec. Doc. No. 507-2, p. 5. The February 20, 2009 letter forwarded to the Grocers notes in pertinent part:
> Mortgagee hereby gives notice...to Tenant that the assignment of rents and leases contained in the Mortgage and the Assignment of Leases has become absolute and that pursuant to La. R.S. 9:4401(G), Tenant is hereby obligated and directed to deliver all Rent, including but not limited to, all Fixed Annual Rent (as defined in the Lease), all Renewal Period Rent (as defined in the Lease) and all other performance by Tenant due under the Lease directly to Mortgagee...Notice is hereby further given that pursuant to La. R.S. 9:4401(G)(2), "a debtor who has received written notice that the assignment has become absolute will not be discharged from his debt if he pays anyone other than the assignee." Rec. Doc. No. 507-7, pp. 1-2.

The Grocers also contend that GE's rights may be impaired or impeded if not joined. The Grocers direct the Court to provisions of the mortgage in which plaintiffs granted GE a security interest in "all rights and claims of any kind that Mortgagor may have against any tenant under the Leases" in addition to "claims or causes of action pertaining to or affecting the Premises or the Improvements...." Rec. Doc. No. 507-5, pp. 2-3. The Court notes that GE has made no effort to intervene in this matter and that GE's successor-in-interest recently filed a lawsuit in this Court, asserting that it has a mortgage lien and security interest over "any and all amount that the Trusts have, or may recover, by settlement or otherwise in connection with the litigation they have pending in the United States District Court for the Eastern District of Louisiana." Civil Action No. 09-2978, Rec. Doc. No. 1, para. 8.

Assuming without finding that GE must be joined under Rule 19(a), joinder of GE will deprive this Court of subject matter jurisdiction. In March 2007, defendants removed the lawsuit to this Court, citing the Court's original jurisdiction pursuant to 28 U.S.C. § 1332 based on the complete diversity of the plaintiffs and defendants.[18] The notice of removal alleged that plaintiffs are "residents"[19] of Washington and California, A&P is a Maryland corporation with its principal place of business in New Jersey, Sav-A-Center is a Delaware corporation with its principal place of business in New Jersey, and Commonwealth is a Canadian corporation with its principal place of business in Canada. A record from the Delaware Department of State indicates that GE is a Delaware corporation.[20] Given the lack of diversity between Sav-A-Center and GE, joinder of GE as a plaintiff will deprive this Court of jurisdiction. *See Owen Equip. & Erection co. v. Kroger*, 437 U.S. 365, 373-74, 98 S. Ct. 2396, 2402, 57 L. Ed. 2d 274 (1978). Rule

---

[18] Rec. Doc. No. 1.

[19] The proper inquiry for purposes of diversity jurisdiction is domicile not residence.

[20] Rec. Doc. No. 515-2. Plaintiffs and the Grocers dispute the principal place of business of the party proposed to be joined. Plaintiffs allege in a sur-reply that GE's principal place of business is Washington. In a response to plaintiffs' sur-reply, the Grocers contend that the real party in interest is GE's successor-in-interest, CEF Funding, L.L.C. ("CEF"), and that CEF's principal place of business is Connecticut. The Grocers direct the Court to CEF's complaint against plaintiffs wherein CEF alleges that it is a citizen of Connecticut and Delaware. Civil Action No. 09-2978, Rec. Doc. No. 1, para. 2. Neither GE nor CEF's principal place of business will alter the Court's analysis, given that both GE and CEF are also alleged to be citizens of Delaware. *Id.* As discussed above, Sav-A-Center is a citizen of Delaware.

19(b) directs the Court to determine whether to dismiss this matter or proceed without GE.

The Grocers, who request joinder as opposed to dismissal, argue that the Court need not dismiss the action for lack of diversity jurisdiction. Instead, the Grocers argue that GE is "an involuntary plaintiff" which the Court can designate as a defendant. Indeed, the Fifth Circuit has explained that where a party has an obligation to join as a plaintiff but refuses, "the preferred method is to designate and serve involuntary parties as defendants, regardless of their appropriate interest alignment." *Eikel v. States Marine Lines, Inc.*, 473 F.2d 959, 962 (5th Cir. 1973). However, the Fifth Circuit has also explained that the "law generally disfavors forced joinder of a party as a plaintiff" and that involuntary plaintiffs should only be joined in the "proper case," where "the absent party has either a duty to allow the plaintiff to use his name in the action or some sort of an obligation to join plaintiff in the action." *Id.* The Court is not convinced that GE has such an obligation based on its position as assignee.

Moreover, the Fifth Circuit has recognized that for purposes of diversity jurisdiction, the court should align parties "according to their interests before determining diversity." *Id.* (quoting 3A Moore's Federal Practice ¶19.06"); *see also Dolch v. United Cal. Bank*, 702 F.2d 178181 (9th Cir. 1983) ("The courts, not

the parties, are responsible for aligning the parties according to their interests in the litigation."). Parties may be aligned even if their interests as to other issues conflict. *Id.* Despite GE's claim that plaintiffs have defaulted on their mortgage obligations, plaintiffs and GE appear aligned for purposes of this lawsuit. As argued by plaintiffs, both plaintiffs and GE seek to recover rents from the Grocers pursuant to the lease.[21] Given that GE's joinder will destroy diversity jurisdiction, the Court must determine whether it can proceed without GE.

At least one of the Rule 19(b) factors weighs against proceeding in GE's absence. In light of §9:4401(G)'s language that a debtor cannot discharge obligations owed to the assignee by paying the assignor, a judgment rendered against the Grocers and in GE's absence may conceivably prejudice the Grocers.[22] However, the Court is convinced that such prejudice can be lessened or avoided by shaping relief which will protect the Grocers from incurring the same obligations twice. In fact, plaintiffs suggest that the Grocers deposit into the Court's registry any amounts owed to both plaintiffs and GE.[23]

In the event that the jury's responses to interrogatories

---

[21] Rec. Doc. No. 515, p. 8.

[22] A contrary argument is that § 9:4401(G) should not be applied when a party is ordered to pay a judgment by a court of competent jurisdiction.

[23] *Id.* at p. 12.

11

indicate that the Grocers are liable to plaintiffs for "rents, income and profits,"[24] that amount can be deposited into the Court's registry. Plaintiffs and GE may, within a specified period, assert their claims to the amount in the registry, thereby avoiding the risk of the Grocers incurring duplicate obligations to both plaintiffs and GE.

For the foregoing reasons,

**IT IS ORDERED** that the motion to require the joinder of GE is **DENIED**.


New Orleans, Louisiana, March 17th, 2009.

　　　　　　　　　　　　　　　　　　／s／ Lance M. Africk
　　　　　　　　　　　　　　　　　　**LANCE M. AFRICK**
　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

---

[24] Rec. Doc. No. 507-4, p. 1.