**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **QUINTESSA HUEY, et al.** | **CIVIL ACTION** |
| **versus** | **No. 07-1169** |
| **SUPER FRESH/SAV-A-CENTER, INC., et al** | **SECTION: "I"/2** |

<u>ORDER AND REASONS</u>

Before the Court is a post-verdict motion,[1] filed by Super-Fresh/Sav-A-Center, Inc. and Great Atlantic and Pacific Tea Company, Inc. (collectively "A&P"), seeking a set-off or credit as a result of payments plaintiffs received in settlement. For the following reasons, the motion is **DENIED.**

<u>BACKGROUND</u>

In January, 2007, plaintiffs, Quintessa Huey and Caryn Fong, trustees of the Huey & Fong Trust, and Amy Huey, trustee of the Kenneth Huey Family Trust, filed this lawsuit against A&P. Plaintiffs' lawsuit alleged that after Hurricane Katrina damaged a supermarket building that they had leased to A&P, A&P breached the lease agreement, converted insurance proceeds, abused its rights, committed fraud, and made negligent misrepresentations.

Plaintiffs also sued the property insurers, Lexington Insurance Company ("Lexington"), Commonwealth Insurance Company ("Commonwealth"), and Underwriters at Lloyd's, London ("Lloyds"), for insurance proceeds as well as penalties and damages for their

_____

[1]R. Doc. No. 627.

1

alleged bad faith in failing to timely pay insurance proceeds.[2]

On April 30, 2008, plaintiffs settled with Lexington, the primary insurer. On June 18, 2008, plaintiffs settled with Lloyds, the second excess insurer.[3] In total, plaintiffs received more than $3 million in settlement.[4]

A jury trial was held in July, 2009. The jury found A&P liable for abuse of rights and negligent misrepresentation and assessed plaintiffs' damages at $1,650,000.00.[5] On July 28, 2009, this Court entered a judgment in favor of plaintiffs and against A&P for $1,165,000.00.[6] On August 7, 2009, A&P filed this motion, arguing that the Court should set-off the $1,650,000.00 judgment with the settlement amounts.[7]

## LAW AND ANALYSIS

A&P contends that it is entitled to an offset because plaintiffs sought the same damages from A&P that plaintiffs received from Lexington and Lloyds in settlement and that plaintiffs cannot receive the same types of damages twice.

---

[2]Insurance coverage was provided through a three-layer program.

[3]Commonwealth Insurance Company was the first excess insurer.

[4]Plaintiffs also received a $1.2 million unconditional tender from Lloyds in October, 2007. Rec. Doc. No. 610, p. 10, para. 18.

[5]Rec. Doc. No. 613-3, pp. 2-3.

[6]Rec. Doc. No. 618.

[7]When the Court reserved the offset issue for determination after trial, Commonwealth argued that any judgment against it should be offset by plaintiffs' settlement with the other two layers of insurance. The Court was not aware that A&P was also intending to assert this argument.

Specifically, A&P argues that the jury verdict consisted mostly of lost rent,[8] a form of damages which A&P contends the insurers already paid to plaintiffs in settlement.[9]

A&P is correct that plaintiffs are not entitled to collect the same type of damages more than once. *Albert v. Farm Bureau Ins. Co.*, 940 So. 2d 620, 622 (La. 2006)("Louisiana law does not allow for double recovery of the same element of damages."). Nonetheless, as discussed below, the Court cannot conclude that the jury awarded plaintiffs the same damages that plaintiffs previously received from the property insurers.

A&P directs the Court to *Prescisionware, Inc. v. Madison County Tobacco Warehouse*, a Fifth Circuit case that A&P asserts is "remarkably similar" to this case.[10] 411 F.2d 42 (5th Cir. 1969).

---

[8]At trial, plaintiffs sought the following damages: $2,400,000.00 for lost rent, $30,000.00 for insurance proceeds, $175,000.00 for property taxes, and $285,000.00 for forbearance fees and other payments plaintiffs made to their mortgagee. Rec. Doc. No. 627-6, pp. 4-5.

[9]Plaintiffs' settlement agreement with Lloyds satisfied and released plaintiffs' claims for "loss of income or rents" and "lost rental income." Rec. Doc. No. 627-3, pp. 3, 5; *see also* Rec. Doc. No. 627-5, p. 4. At trial, plaintiffs sought lost rent from Commonwealth. Rec. Doc. No. 627-4, p. 6, para. 3.

The Court notes that the release is broad, covering "any claims for breach of any insurance policy...contract damages, property damages, building damages, contents damages, and conditions in or on the premises, allegations relating to or arising out of the adjustment and/or handling of the claim, general and special damages, alleged mental anguish, costs, liabilities, loss of service, business income, bad faith, statutory penalties, attorneys' fees, costs, loss of property of others, expenses, and every other claim of every kind and nature whatsoever, whether known or unknown, anticipated or unanticipated, which UNDERSIGNED now has or claims to have or could claim to have, or which may hereafter accrue, arise out of, or in any way relate to claims for coverage under the Policy. Rec. Doc. No. 627-3, p. 3.

[10]Rec. Doc. No. 627-7, p. 9.

In *Prescisionware*, the Fifth Circuit held that the district court should have offset a jury verdict in favor of a landlord and against the tenant because the landlord had already received insurance payments covering the damages. *Id.* at 47-48. Noting that the tenant had paid a substantial portion of the insurance premiums, the Fifth Circuit explained, "To permit [the landlord] to keep the insurance money in the case at hand, and then to collect from [the tenant] would be double recovery not sanctioned by law." *Id.* at 48 (citing *Publix Theaters Corp. v. Powell*, 71 S.W. 2d 237 (Tex. Comm. App. 1934)).

The instant case is similar to *Prescisionware* in that the lease agreement required A&P to pay the insurance premiums for the supermarket building and plaintiffs eventually received payments from the insurers. However, there is an important distinction between the cases. In *Prescisionware*, the trial court excluded all evidence of the insurance payments. *Id.* at 46-47.[11] Initially, this Court ruled that the settlement information would be excluded from evidence. However, following A&P's continued assertions that the amount of settlement money that plaintiffs had received was necessary and relevant to its mitigation defense, the Court

_____

[11]In *Publix Theaters*, the jury did not hear testimony that the plaintiffs had received $20,000 in insurance payments and that the defendants had paid the insurance premiums. 71 S.W. 2d at 311.

The Montana Supreme Court's decision in *Five U's, Inc. v. Burger King Corp.* is also distinguishable. 962 P.2d 1218 (Mont. 1998). The case did not reach a jury as the trial court determined on summary judgment that the lessee was entitled to a full credit for insurance payments received by the lessor. *Id.* at 1220-21.

reconsidered its earlier decision and allowed the parties to introduce the amount and date of settlement.[12] The jury heard testimony that plaintiffs had received more than $3 million from Lloyds and Lexington in settlement. At trial, A&P's counsel questioned plaintiffs about the amount that they had received in settlement. Counsel further argued that plaintiffs should have repaired the store and that plaintiffs already received their damages in settlement.[13]

---

[12]Rec. Doc. No. 592.

[13]A&P's counsel argued the following:
> There's no dispute that plaintiff's got $4.4 million from Lloyd's.
> There's no dispute that they got that money for repairing our – this building here that we were using, that they wanted to use; and for all their other claims, another 3-point plus million dollars – I forget the exact math.
> The evidence shows that they got $1.2 million, as you just saw, from Commonwealth's counsel, paid by Lloyd's, A&P insurer, for repair to the building.
> ...
> And most importantly, she was unable tp explain – unable to explain – what happened to these millions of dollars she got from Lloyd's. The building's not repaired, she's got the money, where is it?
> ...
> She, likewise, could not, or perhaps would not tell you what happened to that $4.4 million they got from Lloyd's of London years ago. And doesn't that seem odd?
> ...
> After they get $1.2 million to pay for the repair of the building, and then, subsequently, they get this $3.2 million. Does it seem coincidental that the money you just heard their lawyers ask you to award this morning is right about this $3.2 million? They've already received it.
>
> They've gotten the $1.2 million to repair the building, and they've gotten another slug of cash $3.2 million. And now they want you to award – I was trying to put in a calculator, couldn't even do it – millions of dollars against A&P and against Commonwealth. There's no evidence for those types of awards. None whatsoever.

July 21, 2009 Transcript of Closing Argument (Rough Draft Copy), pp. 2, 9, 11, 22.

The Court instructed the jury on plaintiffs' duty to mitigate their damages, explaining that the jury should not award plaintiffs damages if they found that plaintiffs failed to take advantage of an opportunity to mitigate.[14] The Court also explained that plaintiffs cannot be made whole more than once.[15] The jury then awarded plaintiffs $1,165,000.00, not the $2,400,000.00 plaintiffs sought in lost rent.

It is clear from the verdict that the jury did not award plaintiffs the full amount that they sought in lost rent, not even half. Nor does the $1,165,000.00 reflect the full amount that plaintiffs sought for other types of damages such as forbearance fees or property taxes. Without being privy to the jury's deliberations, the Court cannot determine how the jury arrived at the $1,165,000.00 verdict.[16] The only logical conclusion that this

---

[14]The Court instructed the jury as follows:
> If you find a defendant is liable and that the plaintiffs have suffered damages, the plaintiffs may not recover for any item of damage which they could have avoided through reasonable effort. If you find by a preponderance of the evidence that the plaintiffs unreasonably failed to take advantage of an opportunity to lessen their damages, you should deny them recovery for those damages which they would have avoided had they taken advantage of the opportunity.

Rec. Doc. No. 613-6, p. 27.

[15]*Id.* at 26.

[16]The Court notes that it appears as if the jury may have considered the Lloyds' June 18, 2008 settlement as covering lost rent from November, 2007 until June, 2008. If rent was $74,000 a month, as plaintiffs asserted, then rent from June, 2008 to the July, 2009 trial would have been $962,000. Plaintiffs also sought $30,000 for insurance premiums and $175,000 for property taxes. These amounts total $1,167,000.

A&P did not request that the jury itemize damages in response to interrogatory No. 10, which asked the jury to determine an amount of damages if they found A&P liable for abuse of rights and negligent misrepresentation, among other tort claims. Rec. Doc. No. 606, p. 5. Instead, A&P objected to an

Court can reach is that the jury considered the settlement amount

and reduced plaintiffs' damages.[17] Accordingly,

**IT IS ORDERED** that A&P's motion for a set-off or credit is

**DENIED.**

New Orleans, Louisiana, November 13, 2009.

_____
            **LANCE M. AFRICK**
    **UNITED STATES DISTRICT JUDGE**

---

itemization of damages in connection with plaintiffs' breach of lease claim.
A&P argued that if the jury is asked to itemize damages based on a finding
breach of lease, then they should also be asked to itemize damages if they
find bad faith breach of lease. *Id.* at p. 4; *see also* July 21, 2009 Transcript
of Objections(Rough Draft Copy), p. 5.

[17]It is unclear whether the cases cited by A&P in support of its
argument that plaintiffs have the burden to show that they did not obtain
double recovery and that non-settling defendants are entitled to a dollar-for-
dollar credit are applicable to this case as none of the cited cases were
governed by Louisiana law. *See In re Texas General Petroleum Corp. v. Leyh*, 52
F.3d 1330, 1340 (5th Cir. 1995)("[T]he best way for a plaintiff to satisfy his
burden is to offer as proof the written settlement, which should specifically
stipulate the allocation of damages to each cause of action."). The Court
notes that under Louisiana law, if defendants are solidarily liable for
damages, then courts are to calculate credits based on the settling
defendant's portion of the debt, and not based on the settlement amount
received by the plaintiff. La. Civ. Code art. 1803; *see Farbe v. Cas.
Reciprocal Exchange*, 764 So. 2d 994, 997 (La. 2000). Notwithstanding, the
Court has determined that an offset is inappropriate in light of the jury's
verdict, which presumably already takes the settlement amounts into account.