UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **QUINTESSA HUEY, et al.** | CIVIL ACTION |
| **versus** | No. 07-1169 |
| **SUPER FRESH/SAV-A-CENTER, INC., et al** | SECTION: "I"/2 |

## ORDER AND REASONS

Before the Court is plaintiffs' motion[1] for new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. For the following reasons, the motion is **DENIED**.

Rule 59 permits a United States District Court to grant a new trial on all or some of the issues "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The United States Court of Appeals for the Fifth Circuit has clarified that a new trial is appropriate "if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985). A court may also grant a new trial based on newly discovered evidence. *Diaz v. Methodist Hosp.*, 46 F.3d 492, 495 (5th Cir. 1995). "Courts do not grant new trials unless it is reasonably

---

[1] R. Doc. No. 640.

1

clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Del Rio Distributing, Inc. v. Adolph Coors* Co., 589 F.2d 176, 179 n.3 (citing 11 Wright & Miller, Federal Practice & Procedure § 2803, at 31-33 (3d ed. 1973)).

Plaintiffs first seek a new trial based upon the actions of defendants, Great Atlantic and Pacific Tea Company, Inc. and Super-fresh/Sav-A-Center, Inc. (collectively "A&P"), in waiving their claim that the lease had terminated before trial and then subsequently noticing plaintiffs' default of the lease after trial.[2] Plaintiffs contend that A&P "strategically timed" an August 3, 2009 letter advising plaintiffs that they were in

---

[2] In September, 2006, A&P terminated the lease agreement with plaintiffs on the basis that plaintiffs had not rebuilt the store as required by the lease. On February 13, 2009, about a month before the March, 2009 trial, A&P waived its claim of termination, citing the terms of an October, 2007 agreement requiring that plaintiffs use the $1.2 million in insurance proceeds to repair the store if A&P expressly waived its claim that the lease had terminated. Rec. Doc. No. 640-7, p. 4. The waiver further stated that plaintiffs' "invocation of the Court's equitable power to prevent lease termination is moot." *Id.* at p. 6.
 The Court continued the March, 2009 trial date and trial commenced in July, 2009. On August 3, 2009, just over a week after the conclusion of trial, A&P sent a letter advising that plaintiffs were in breach of the lease for failing to deposit the insurance proceeds into a trust account, failing to use insurance proceeds to restore the leased building, and failing to restore the building within ninety days of A&P's waiver of termination. Rec. Doc. No. 640-6, pp. 2-4. The letter requests that plaintiffs: (1) deposit $3.35 million in insurance proceeds received by plaintiffs into trust, (2) confirm that plaintiffs have not spent the insurance proceeds, (3) use all proceeds to restore the building, (4)promptly commence to restore the building, and (5) complete the restoration within ninety days. The letter further states that A&P "will continue to honor its Lease obligations as Tenant, but that the Trusts must also honor their Lease obligations as Landlord." *Id.* at p. 4. Whether the plaintiffs have ninety or 210 days to restore the building is a factual question, which is not for the Court to determine at this time.

default of the lease, precluding plaintiffs from litigating their claim for enforcement of the lease at trial.[3] Although the Court questions A&P's timing, an event that occurs after trial, in this case just over a week after trial, does not give rise to grounds for a new trial.[4] *See Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1358 (5th Cir. 1988); *Cortex Corp. v. United States*, 638 F.2d 119, 121 (9th Cir. 1981)("Cases construing 'newly discovered evidence,' either under 60(b)(2) or Rule 59, uniformly hold that evidence of events occurring after the trial is not newly discovered evidence within the meaning of the rules."); *see also NLRB v. Jacob E. Decker & Sons*, 569 F.2d 357, 364 (5th Cir. 1978).

Plaintiffs also move for a new trial on the ground that A&P's counsel referred to plaintiffs as married despite plaintiffs' motion *in limine* to exclude evidence of Quintessa Huey's ("Huey") personal status, including her sexual

---

[3] The Court notes that at trial, plaintiffs sought lost rent from the time that A&P made its final rent payment after its September 26, 2006 termination until trial. Evidence was presented to the jury relative to the September, 2006 termination as well as the February, 2009 waiver. The jury found that A&P did not breach the lease agreement. Rec. Doc. No. 613-3, p. 1.

[4] A&P's February, 2009 waiver provided that its "express waiver in writing of [its] claim that the lease has terminated as the result of plaintiffs' pre-lawsuit conduct is without prejudice as to all other defenses and claims, and in no way relieves plaintiffs of their obligations under the lease." Rec. Doc. No. 640-7, p. 3.
The August 3, 2009 letter states that plaintiffs' failure to restore the leased building within the five months since the February, 2009 waiver "constitutes a separate and independent default." Rec. Doc. No. 640-6, pp. 3-4.

orientation. Counsel's single reference to plaintiffs as married does not constitute a ground for new trial. Following the reference, the Court offered to give a curative instruction to the jury, which plaintiffs' counsel declined. Moreover, upon request of plaintiff's counsel, the Court included the following in its jury charges: "Do not let bias, prejudice or sympathy play any part in your deliberations. All people, including all corporations, are equal before the law and must be treated as equals in a court of justice."[5]

Finally, plaintiffs contend that a new trial is warranted based on this Court's order allowing the jury to hear information about plaintiffs' settlement with two of the insurers. On multiple occasions, the Court exhaustively considered the parties' arguments with respect to the admissibility of settlement information. For the reasons stated in the Court's July 15, 2009 order, the Court is not convinced that testimony regarding the amount and date of plaintiffs' settlement was substantially outweighed by the danger of unfair prejudice.[6] Indeed, plaintiffs' counsel questioned Huey about the amount of

---

[5] Rec. Doc. No. 613-6, pp. 3-4. The Court further notes that A&P Exhibit 167, which was admitted into evidence without objection, includes federal and state tax forms that identify plaintiffs' filing status as "Married filing jointly."

[6] Rec. Doc. No. 592, p. 3.

4

one of the settlements on direct examination.[7] The Court maintains its decision to allow such information into evidence.

Plaintiffs have not demonstrated any of the grounds identified as justifying a new trial under Rule 59. Accordingly, **IT IS ORDERED** that plaintiffs' motion for new trial is **DENIED**.

New Orleans, Louisiana, November 13th, 2009.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[7] July 14 Transcript (Rough Draft) of Direct Examination of Quintessa Huey, p. 32.